41457. GEORGIA FARM BUREAU MUTUAL INSURANCE
COMPANY v. DREXLER.
(326 SE2d 741)

BELL, Justice.

We granted certiorari to review *Drexler v. Ga. Farm Bureau Mut. Ins. Co.,* 171 Ga. App. 718 (320 SE2d 854) (1984), in order to consider the following questions: 1) whether the November 1974 "Offer to Purchase Additional or Optional Coverages" which was completed and returned by the named insured satisfied the requirements of OCGA § 33-34-5 (c)? and 2) whether the insurer was required to make an offer of optional coverages to Mrs. Drexler under OCGA § 33-34-5 (b) or OCGA § 33-34-5 (c) when the policy was issued for her vehicle with herself as the named insured? The above questions refer to OCGA § 33-34-5 (b) and (c) as they existed before their 1982 amendments.

1. As to the issue raised by the first certiorari question, the Court of Appeals, relying on our decision in *Wiard v. Phoenix Ins. Co.,* 251 Ga. 698, 700 (310 SE2d 221) (1983), held that the November 1974 "Offer to Purchase Additional or Optional Coverages" did not satisfy the requirements of OCGA § 33-34-5 (c), because the form indicated that a failure to respond would result in the inclusion of the optional coverages. It is apparent that the Court of Appeals has misunderstood our decision in *Wiard.* See also *Southern Guaranty Ins. Co. v. Rowland,* 169 Ga. App. 554 (1) (313 SE2d 753) (1984).

*Wiard* concerned the issue of whether the insurer gave Wiard an opportunity to accept or reject, in writing, the applicable optional coverages as required by OCGA § 33-34-5 (c). *Wiard,* supra, 251 Ga. at 698. A resolution of this issue required an interpretation of what constitutes "an opportunity" within the meaning of OCGA § 33-34-5 (c). *Wiard,* supra, 251 Ga. at 700. We held that "a two part requirement necessarily exists. The opportunity must include a document containing (1) written information clearly stating the optional no-fault PIP coverage and the optional no-fault vehicle damage coverage, and (2) a means for the insured to make a written acceptance or rejection of each. Signatures, though acceptable, are not required. Mere blocks to be checked are sufficient." Id.

In *Wiard* two letters were sent to the insured informing him, inter alia, of certain aspects and coverages of the no-fault laws. In determining whether the insurer had met the requirements of OCGA § 33-34-5 (c), we declined to consider the first letter, for reasons which were logical under the circumstances of that case. Wiard, by not re-

sponding to the first letter, was deemed, under the terms of that letter, to have accepted the $50,000 no-fault PIP coverage. However, the second letter, which referred to the first letter, informed Wiard that due to a change in the law, his failure to respond to the first letter did not mean that he had $50,000 in coverage, and that if he wanted any "additional coverages," he would have to contact his agent. *Wiard*, supra, 251 Ga. at 699, 701. Implicit in our decision was the conclusion that the combined effect of the two notices was to mislead Wiard, and render his initial choice meaningless. When Wiard received the second letter, he was again faced with accepting or rejecting optional coverages. If, as was likely, Wiard had not retained the first letter, he had no opportunity to use it as a basis for that decision. For these reasons, we declined to consider the first letter to determine if the insurer had met the requirements of OCGA § 33-34-5 (c). *Wiard*, supra, 251 Ga. at 700. Thus, we did not hold, as the Court of Appeals concluded in the instant case, that the insurer failed to meet the requirements of OCGA § 33-34-5 (c), *simply* because the first letter informed the insured that a failure to respond would result in the inclusion of the optional coverages.

Here, in contrast to *Wiard*, there are no impediments to a consideration of the November 1974 offer. Mr. Drexler did not rely on the inclusionary language of the offer, but instead exercised the opportunity given pursuant to that offer to accept or reject certain coverages. The issue now before us, then, is whether the opportunity provided to Ed Drexler was sufficient to meet the requirements of OCGA § 33-34-5 (c) as enunciated in *Wiard*. We find that it was. The November 1974 offer contained written information clearly stating the optional no-fault PIP coverage and the optional no-fault vehicle damage coverage, and a means, through the checking of appropriate boxes, for the insured to make a written acceptance or rejection of each. A signature space at the bottom of the selection form was also provided. We thus hold that the November 1974 offer satisfied the criteria set forth in *Wiard*.

2. With regard to the second certiorari question, the issue is whether Georgia Farm Bureau was required to make an offer of optional coverages to Mrs. Drexler under OCGA § 33-34-5 (b) or (c). We resolve that question in the negative.

(a) OCGA § 33-34-5 (c) provides that "[o]n or after March 1, 1975, *all named insureds* in existing motor vehicle liability policies who have not previously responded to an offer to accept or reject the optional coverages required to be offered by this chapter shall be given an opportunity to accept or reject, in writing, the optional coverages required to be offered under this Code section." (Emphasis supplied.)

The only logical interpretation of OCGA § 33-34-5 (c) is to re-

quire the extension of an offer to accept or reject optional coverage to those persons who, prior to March 1, 1975, were named insureds in existing motor vehicle liability policies *and* who had not responded previously to an offer to accept or reject such coverages.

Had the General Assembly intended to impose a condition which would exist for an unlimited time in the future — for policies not yet printed, insuring persons not yet born, relative to motor vehicles not yet manufactured — it easily could have done so by referring to liability policies which "now or in the future shall be issued." Instead, the language refers to "all *named* insureds in all *existing* motor vehicle liability policies." (Emphasis supplied.)

If the term "existing" does not serve to tie down the referrant to the statutory date, i.e., March 1, 1975, then it is pure surplusage, as a motor vehicle liability policy which is not "existing" is no policy at all.

Even so, we have answered this question on at least two prior occasions. "OCGA § 33-34-5 (c) applies to policies in existence on March 1, 1975. OCGA § 33-34-5 (b) applies to applications for policies beginning March 1, 1975." *Stafford v. Allstate Ins. Co.*, 252 Ga. 38, 40 ( 311 SE2d 437) (1984). See also *Wiard v. Phoenix Ins. Co.*, 251 Ga. 698, supra, as follows: "However, the original Act failed to take into account policies which would be in existence on the effective date, March 1, 1975. No application would be submitted for these policies because they would already be in existence. Yet, the question of optional coverages needed to be addressed for existing as well as new policies. The 1975 amendment dealt with this question. The pertinent part of the amendment is codified at OCGA § 33-34-5 (c) and provides: 'On and after the effective date of this Act, all *named* insureds in *existing* motor vehicle liability policies . . . .' " (Emphasis supplied.) 251 Ga. at 699, 700.

Finally, while the policy in this case was in existence on the effective date of the Act, it is undenied that Mrs. Drexler's name did not appear in such policy. Hence she cannot be a "named insured" within the meaning of the Act, and the provisions of OCGA § 33-34-5 (c) are inapplicable.

(b) We deem it equally clear that OCGA § 33-34-5 (b), as it existed during the applicable period of time, does not apply to Mrs. Drexler's situation. As noted above, her name appears on an existing policy, having been added as an additional named insured.

That is, of course, a common practice in our state, particularly with regard to family members, whose names are frequently added and deleted as named insureds. The language of former subsection (b) refers to "[e]ach application for a policy of motor vehicle liability insurance sold in this state. . . ." We decline to extend that language to include the addition of a family member on an existing policy.

*Judgment reversed. All the Justices concur, except Gregory, J., who concurs specially and Smith, J., who concurs in the judgment only.*

GREGORY, Justice, concurring specially.

We hold in the majority opinion that Mr. Drexler responded to a pre-no-fault act offer which met the requirements of OCGA § 33-34-5 (c) as enunciated in *Wiard v. Phoenix Ins. Co.*, 251 Ga. 698 (310 SE2d 221) (1983). While I agree that a pre-no-fault act offer which meets these requirements is an adequate offer, I would not be willing to hold that an offer which does not meet these requirements would in every case be insufficient. The no-fault statute spells out no particular requirements for a pre-no-fault act offer except that it must be "an offer to accept or reject the optional coverages required to be offered by this chapter. . . ." OCGA § 33-34-5 (c).

DECIDED MARCH 14, 1985.

Walters, Davis, Smith & Meeks, Thomas E. Pujadas, J. Harvey Davis, for appellant.

Robert E. Sherrell, Terrence J. Paulk, for appellee.