## 77406. GOVERNMENT EMPLOYEES INSURANCE COMPANY (GEICO) v. SISK.
(376 SE2d 25)

BANKE, Presiding Judge.

The appellee sued the appellant insurer to recover optional personal injury protection (PIP) benefits allegedly due her as a consequence of the insurer's failure to comply with Ga. L. 1975, p. 3, § 1 (formerly codified as OCGA § 33-34-5 (c)), which required motor vehicle liability insurers to give existing policyholders an opportunity to accept or reject optional PIP coverage in writing. The trial court granted summary judgment to the insured and denied summary judgment to the insurer on the coverage issue, and the insurer brought this appeal.

The insurance policy in question was already in existence on March 1, 1975, when the statute took effect. On May 19, 1975, the insurer mailed certain materials to the insured in an effort to comply with the statute. Included in these materials was a letter advising as follows: "Basic Personal Injury Protection, with a maximum limit of $5,000 per person, was automatically added to every Georgia auto insurance policy on March 1, 1975. However, if you want more than $5,000 of protection for you and your family, you must request a higher limit. Additional limits of $10,000, $25,000 or $50,000 worth of Personal Injury Protection are available. . . . Because auto accident injury costs continue to rise, *we recommend the $25,000 limit of Additional PIP coverage.*" (Emphasis from original.)

Accompanying the letter was a form entitled, "GEORGIA NO-FAULT OPTION SELECTOR," to be used by the insured in the event she desired to purchase optional coverage. With respect to PIP coverage, the following options were listed:

- ☐ I want $10,000 Additional PIP at an annual cost of $5.00 per vehicle.
- ☐ I want $25,000 Additional PIP at an annual cost of $9.00 per vehicle.
- ☐ I want $50,000 Additional PIP at an annual cost of $14 per vehicle.

The insured was asked to mark her desired selections on the form, to sign and date it, and to return it in an envelope provided for that purpose; and she was instructed that if she did not do so within 30 days, the company would assume that the offer of additional cover-

ages had been rejected. The insured did not return the form; and several years later, on February 11, 1981, she was involved in the accident which gave rise to the present claim. *Held*:

As codified by former OCGA § 33-34-5 (c), Ga. L. 1975, p. 3, § 1 provided as follows: "On and after March 1, 1975, all named insureds in existing motor vehicle liability policies who have not previously responded to an offer to accept or reject the optional coverages required to be offered by this chapter shall be given an opportunity to accept or reject, in writing, the optional coverages required to be offered under this Code section; provided, however, that the failure of an insured to notify his insurer of his written acceptance or rejection within 30 days after written notice of the offer has been mailed by the insurer, postage prepaid, by first class mail to the address stated in the policy shall constitute a rejection of the optional coverage."

The insured in this case contends that the materials mailed to her by the insurer failed to meet these requirements for two reasons: (1) Because the selection form did not provide a method by which she could *reject* in writing any and all offers of optional PIP coverage but was designed only for use in electing such coverage, and (2) because the optional PIP coverage limits described in the letter and listed on the form were evidently not intended to represent "additional" coverage limits, as indicated, but rather *total* coverage limits. (This assertion is based on the fact that the maximum PIP coverage required to be made available under the Georgia Motor Vehicle Accident Reparations Act is $50,000, see OCGA § 33-34-5 (a), whereas the total coverage purportedly offered by the letter and form appears to have been $55,000.) We hold that neither of these asserted deficiencies invalidated the offering.

Since the statute specified that a failure to accept the offer of optional coverage within 30 days would be considered a rejection of the offer, it is clear that the Legislature had no intention of requiring the insurer to extend such coverage to existing policyholders in all cases where the policyholder did not reject it in writing. In *Wiard v. Phoenix Ins. Co.*, 251 Ga. 698, 700 (310 SE2d 221) (1983), the Supreme Court held that an offering would be deemed sufficient to meet the requirements of former OCGA § 33-34-5 (c) if it clearly informed the insured of the optional coverages available and provided "a means for the insured to make a written acceptance *or* rejection of each." (Emphasis supplied.) In accordance with this decision and with the reasonable intendment of the statutory language, we conclude that the failure to provide on the selection form a mechanism for rejecting those optional coverages which were not desired as well as a mechanism for electing those which were desired did not render the form defective.

While the evident mistake in describing the optional coverage

limits as "additional" limits rather than total limits does appear to have constituted a defect, we hold that this mistake was not of sufficient magnitude to nullify the offering. "Substantial compliance" with the Code section was all that was needed in order for the offering to be valid. See *Anderson v. United Svcs. Auto. Assn.*, 185 Ga. App. 552 (365 SE2d 467) (1988). It is apparent that the overstatement of the available optional PIP coverage limits could not have been a material factor in the insured's decision not to select such coverage since, to the extent it misled her, it would have misled her to believe she would receive $5,000 *more* PIP coverage in return for payment of the additional premium amounts listed than was actually the case. We accordingly conclude that the mistake did not prevent the insured's failure to return the document from constituting a valid rejection of the optional PIP coverage actually available to her. Both the grant of summary judgment to the insured and the denial of summary judgment to the insurer on the coverage issue are consequently reversed.

*Judgment reversed. Birdsong, C. J., and Beasley, J., concur.*

DECIDED DECEMBER 2, 1988 —
REHEARING DENIED DECEMBER 14, 1988 — 

*Drew, Eckl & Farnham, G. Randall Moody*, for appellant.
*Monroe J. Feldman, Michael D. Goodman*, for appellee.